UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL A. EVANS,

    Plaintiff,

v.                                     Case No. 3:14cv466/MCR/CJK

TERRY L. RHODES, Executive
Director for Florida Department of
Highway Safety and Motor Vehicles,

    Defendant.
_____/

ORDER and
REPORT AND RECOMMENDATION

This matter is before the court on defendant's Renewed Motion to Dismiss Amended Complaint. (Doc. 17). The motion was converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). (Doc. 19). Thereafter, plaintiff Michael Evans filed: (1) an Emergency Motion to Enjoin the Enforcement of Defendant's Notice of Suspension Pending Disposition of this Cause (doc. 20); and (2) a Motion for Extension of Time to respond to defendant's motion for summary judgment (doc. 22). Plaintiff subsequently responded in opposition to defendant's motion for summary judgment and filed a cross-motion for summary judgment. (Doc. 23).

The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E). Upon careful consideration of the record, the parties' submissions, and the relevant law, the undersigned orders that plaintiff's Motion for Extension of Time (doc. 22) be granted, and recommends that defendant's motion for summary judgment (doc. 17) be granted, plaintiff's cross-motion for summary judgment (doc. 23) be denied, and plaintiff's Emergency Motion to Enjoin the Enforcement of Defendant's Notice of Suspension Pending Disposition of this Cause (doc. 20) be denied as moot.

## BACKGROUND

On May 27, 2015, Mr. Evans filed his amended complaint, the operative pleading in this action. (Doc. 15). The complaint names Terry L. Rhodes as the sole defendant in this action. Rhodes is sued in her official capacity as the Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("Department"). Evans challenges the constitutionality of § 322.245, Fla. Stat., which requires the Department to suspend the driver's licenses of individuals who fail to pay court costs. Evans claims the Due Process Clause requires the Department to provide individuals with pre-suspension hearings to determine their ability to pay. Evans seeks: (1) "a declaration that Florida Statute § 322.245 is unconstitutional because the

[Department's] procedures failed to provide proper notice and opportunity to a hearing prior to suspension of his license which violated the Due Process Clause"; and (2) "injunction relief requiring the [Department] to implement proper procedures to ensure that [Evans] receives proper notice and opportunity to hearing to determine his ability to pay prior to suspension of his license."  (Doc. 15, p. 1-2).

On June 17, 2015, the Department moved to dismiss Evans' complaint, asserting: (1) he failed to pursue an adequate remedy under state law; (2) he had adequate notice of the license suspension; and (3) the Department is not required to conduct a pre-suspension hearing regarding his ability to pay.  (Doc. 17).  Because the Department's motion referenced and relied upon matters outside the pleadings, the court converted it to a motion for summary pursuant to Federal Rule of Civil Procedure 12(d) and provided the parties with information concerning Rule 56 review.  (Doc. 19).  Evans responded in opposition to the Department's motion for summary judgment and cross-moved for summary judgment.  (Doc. 23).

## FACTS

The following facts are drawn from plaintiff's verified amended complaint (doc. 15) and the evidence in the summary judgment record (doc. 17).  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in

a sworn complaint must be considered in opposition to summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

In 2004, Mr. Evans was found guilty of possession of an open container of alcohol and possession of not more than twenty grams of marijuana in Florida. (Doc. 17-1, p. 7, 11). As a result of the convictions, he was placed on probation and assessed fines and court costs (collectively, "court costs"). (Doc. 15, p. 4). On August 29, 2013, the state court terminated Evans' probation. (*Id.*).

In February of 2014, the clerk of court issued a notice of non-compliance indicating that Evans' failure to pay $1,098 in outstanding court costs would result in the suspension of his driver's license pursuant to § 322.245, Fla. Stat. (*Id.*). Mr. Evans never received the notice "because it was sent to a previous address even though the clerk had his P.O. Box address on file." (*Id.*). The clerk referred the "financial obligation suspension" to the Department on April 3, 2014. (Doc. 17-1, p. 8). Pursuant to § 322.251, Fla. Stat., the Department sent notice of the pending suspension to Evans on April 9, 2014. (*Id.*, p. 4).

On April 29, 2014, Evans' license was suspended without his knowledge. (Doc. 15, p. 4; doc. 17-1, p. 4). After learning of the suspension, Evans entered into a repayment plan on May 12, 2014, in order to have his license reinstated; he also paid a $66.00 reinstatement fee.[1] (Doc. 15, p. 4-5). The Department reinstated Evans' license on May 16, 2014. (Doc. 17-1, p. 4).

On July 1, 2014, the clerk entered a second notice of non-compliance. (Doc. 15, p. 5). The notice advised Evans his license would be suspended if he failed to pay his outstanding court costs within thirty days. (*Id.*). On August 14, 2014, the clerk referred the "financial obligation suspension" to the Department. (*Id.*). The Department sent Evans notice of the pending suspension on August 20, 2014. (Doc. 17-1, p. 4). The suspension took effect on September 9, 2014. (*Id.*).

On September 26, 2014, the state court advised Evans he could either perform 70 hours of community service or pay the outstanding court costs within 180 days. (Doc. 17-1, p. 8). Evans again paid the $66.00 license reinstatement fee. (Doc. 15, p. 6). On October 9, 2014, Evans was cited for driving on a suspended license and summoned to appear in court. (*Id.*). On February 2, 2015, the state attorney dismissed the charge of driving on a suspended license. (*Id.*).

---

[1] If Evans had entered into a repayment plan before the suspension of his license, the reinstatement fee would have been $6.00. (Doc. 15, p. 4).

DISCUSSION

Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than

one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

Florida's Statutory Scheme

In Florida, "[w]hen the [Department of Highway Safety and Motor Vehicles] receives notice from a clerk of the court that a person licensed to operate a motor vehicle in [Florida] . . . has failed to pay financial obligations for any criminal offense . . . , in full or in part under a payment plan pursuant to s. 28.246(4), the department shall suspend the license of the person named in the notice." § 322.245(5)(a), Fla. Stat.; *Anderson v. State*, 48 So. 3d 1015, 1016 (Fla. 5th DCA 2010) ("When a

defendant fails to meet financial obligations arising from a criminal case pursuant to a payment plan, the DHSMV must suspend the defendant's license upon receipt of notice from the clerk of court."). The Department is required to notify the individual of the suspension:

> All orders of cancellation, suspension, revocation, or disqualification . . . shall be given either by personal delivery thereof to the licensee whose license is being canceled, suspended, revoked, or disqualified or by deposit in the United States mail in an envelope, first class, postage prepaid, addressed to the licensee at his or her last known mailing address furnished to the department. Such mailing by the department constitutes notification, and any failure by the person to receive the mailed order will not affect or stay the effective date or term of the cancellation, suspension, revocation, or disqualification of the licensee's driving privilege.

§ 322.251(1), Fla. Stat. The suspension takes effect twenty days after the Department mails the notice. *See* § 322.251(2), Fla. Stat. ("The giving of notice and an order of cancellation, suspension, revocation, or disqualification by mail is complete upon expiration of 20 days after deposit in the United States mail[.] Proof of the giving of notice and an order of cancellation, suspension, revocation, or disqualification in either manner shall be made by entry in the records of the department that such notice was given. The entry is admissible in the courts of this state and constitutes sufficient proof that such notice was given."). An individual may seek review of an order of suspension by filing a petition for writ of certiorari in circuit court within thirty days

of the order.  § 322.31, Fla. Stat.; *see also* Fla. App. R. 9.100(c)(1).

"The department must reinstate the driving privilege when the clerk of the court provides an affidavit to the department stating that: (1) The person has satisfied the financial obligation in full or made all payments currently due under a payment plan; (2) The person has entered into a written agreement for payment of the financial obligation if not presently enrolled in a payment plan; or (3) A court has entered an order granting relief to the person ordering the reinstatement of the license."  § 322.245(5)(b), Fla. Stat.

Due Process Clause

Evans claims the Department's failure to hold a hearing addressing his ability to pay court costs *before* suspending his driver's license violates the Due Process Clause of the Constitution.  The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).  "The Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property

at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[T]he government must provide the requisite notice and opportunity for a hearing 'at a meaningful time and in a meaningful manner,' although in 'extraordinary situations' the provision of notice and a hearing may be postponed until after the deprivation has occurred." *Id.* (*citing Fuentes v. Shevin*, 407 U.S. 67, 80, 90, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Id.* (*citing Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

The Department concedes "[a]n individual's property interest in his driving privilege implicates the procedural component of the Due Process Clause." (Doc. 17, p. 10); *see also Dixon v. Love*, 431 U.S. 105, 112, 97 S. Ct. 1723, 1727, 52 L. Ed. 2d 172 (1977) ("It is clear that the Due Process Clause applies to the deprivation of a driver's license by the State."). The Department's suspension of Evans' license also clearly constitutes state action. Thus, only one question remains: Does the Department's procedure for suspending licensing comport with due process? *See Grayden*, 345 F.3d at 1232 ("Because the plaintiffs have alleged that they were

deprived of a constitutionally-protected property interest as a result of state action, due process is implicated and the question becomes what process is due.") (citation omitted).

Despite Evans' insistence that the Department is required to provide him with a pre-suspension hearing addressing his ability to pay, he fails to acknowledge that Florida law provides him an alternative even though he has benefitted from that alternative. Section 28.246(4), Fla. Stat., provides:

> The clerk of the circuit court shall accept partial payments for court-related fees, service charges, costs, and fines in accordance with the terms of an established payment plan. An individual seeking to defer payment of fees, service charges, costs, or fines imposed by operation of law or order of the court under any provision of general law shall apply to the clerk for enrollment in a payment plan. The clerk shall enter into a payment plan with an individual who the court determines is indigent for costs. A monthly payment amount, calculated based upon all fees and all anticipated costs, is presumed to correspond to the person's ability to pay if the amount does not exceed 2 percent of the persons's annual net income, as defined in s. 27.52(1), divided by 12. The court may review the reasonableness of the payment plan.

This provision–which Evans took advantage of in May 2014–requires the clerk to formulate a payment plan based on an individual's ability to pay and permits the court to review the reasonableness of the plan.[2] When Evans entered into a payment plan,

---

[2] In addition, the court may convert an individual's financial obligation into an obligation to perform community service if the court determines the individual is unable to pay. § 938.30, Fla. Stat.

Case No. 3:14cv466/MCR/CJK

he asserts "he was not offered a hearing to determine his ability to pay, but was simply told by the clerk the amount that needed to be paid and was warned if he [did] not make the payment his license would be suspended." (Doc. 23, p. 10). Evans, however, does not indicate the clerk failed to base his payment plan on his income as described in the statute.

Individuals are also afforded a post-deprivation remedy. They may seek review of an order of suspension by filing a petition for writ of certiorari in circuit court. Evans claims this post-suspension remedy is inadequate because it would be limited to "record review" and would not allow him to present evidence concerning his inability to pay court costs. (Doc. 23, p. 6). Evans' argument, however, distorts the type of protection afforded by procedural due process. Procedural due process protects individuals from *erroneous* deprivations of liberty or property interests by the state. *See Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ("Thus, in deciding what process constitutionally is due in various contexts, the [Supreme] Court repeatedly has emphasized that 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process . . . .'") (*quoting Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

To determine whether Florida's scheme is constitutionally adequate, the court must apply the balancing test set forth in *Mathews v. Eldridge*:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Here, the private interest affected is the license to operate a motor vehicle. Although a driver's license may make travel significantly easier for individuals, the interest is not as important as, for example, a person's liberty interest.

Notably, under § 322.245, the Department's task is ministerial; after receiving notification from the clerk that a person has failed to pay court costs, the Department is required to suspend that person's license. The risk that a clerical oversight will result in a erroneous suspension is minimal. *See Dixon*, 431 U.S. at 113 ("Moreover, the risk of an erroneous deprivation in the absence of a prior hearing is not great. Under the Secretary's regulations, suspension and revocation decisions are largely automatic."). Here, Evans does not claim he actually paid his court costs or that the state otherwise mistakenly suspended his license. In addition, due to the limited risk of error, other safeguards such as a pre-suspension evidentiary hearing are

unnecessary and would a impose significant burden on the state. The purpose of this statutory scheme is also reasonable; to encourage defendants to pay their court costs, Florida administratively suspends the driver's licenses of the non-compliant based on a review of relevant records. Based on these factors, Florida's failure to provide a pre-suspension hearing does not violate Evans' due process rights. *See Dixon v. Love*, 431 U.S. at 112-15 (no pre-revocation hearing required when driver's license was revoked based on objective facts in record, such as traffic violations).

Significantly, the thrust of Evans' claim is not that Florida's suspension procedure creates a risk of an erroneous deprivation, but rather that the state may not suspend the licenses of indigents, or near-indigents, for failure to pay court costs. Contrary to Evans' belief, however, the state is required to assess an individual's ability to pay court costs only when it seeks to collect through the threat of imprisonment. *See United States v. Pagan*, 785 F.2d 378, 382 (2d Cir. 1986) ("As is true for the assessments themselves, the mere imposition of interest against an indigent defendant raises no constitutional problems. It is at the point of enforced collection of the principal or additional amounts, where an indigent may be faced with the alternatives of payment or imprisonment, that he may assert a constitutional objection on the ground of his indigency.") (citation and quotation omitted); *cf.*

Page 15 of 19

*Bearden v. Georgia*, 461 U.S. 660, 668-69, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983) (states cannot automatically revoke defendants' probation and imprison them based on their failure to pay a fine; explaining "if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available."). Here, Evans is not subject to imprisonment for failing to pay court costs; his driver's license is merely suspended until he complies with state law.

Evans also takes issue with Department's process for notifying drivers of suspensions:

> Regarding the notice requirement, the plaintiff contends the notice is inadequate and ineffective because he never received any of the notices and, even had he received them, the notices are constitutionally infirm because they do not state with specificity how and where to contest the suspension. The notice does not provide an address to send request nor does it specify particular format in which the proceeding [will] be conducted.

(Doc. 23, p. 2-3).

Notice of a deprivation must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank*

Case No. 3:14cv466/MCR/CJK

*& Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The Department notifies drivers of suspensions by issuing them an "Order of License Revocation, Suspension, or Cancellation." (Doc. 17-1, p. 17). The order informs the recipient: (1) that his driving privilege has been suspended; (2) the effective date of suspension; (3) the length of suspension; and (4) the reason for suspension. (*Id.*). The order advises the recipient the procedure for seeking license reinstatement–obtaining an affidavit from the court that indicates the driver has satisfied the requirements for reinstatement and presenting the affidavit to any licensing office. (*Id.*).

Evans claims this order is inadequate "because it fails to inform the plaintiff what remedy is available to him to address a suspension for failing to pay 'court costs.'" (Doc. 23, p. 3). The level of specificity demanded by Mr. Evans is not required by the Due Process Clause. The order clearly states, "Appeals of this order may be initiated within thirty days of the date of this order by following the procedure specified in S.322.31 F.S." (Doc. 17-1, p. 17). The order is "reasonably calculated" to inform its recipient of the process for appealing the order.

Although Evans asserts he never received the suspension notices from the Department, actual notice is not required. The Department submitted evidence–Evans' official driving record–that indicates the notices were mailed to Evans' last known address as required by § 322.251, Fla. Stat. (Doc. 17-1, p. 4); *see*

*also* § 322.251(2), Fla. Stat. ("Proof of the giving of notice and an order of cancellation, suspension, revocation, or disqualification in either manner shall be made by entry in the records of the department that such notice was given. The entry is admissible in the courts of this state and constitutes sufficient proof that such notice was given."). The fact he may not have received the notices does not establish a due process violation. *See Sanders v. Henry Cty., Ga.*, 484 F. App'x 395, 397-98 (11th Cir. 2012) ("Where a government official is charged with notifying a specific interested party at a known residence, the official must make a serious effort to inform them personally . . . , at least by ordinary mail to the record address. When such an effort is made, due process is satisfied, even if the interested party does not ultimately receive notice.") (citations and quotation omitted).

## CONCLUSION

The Department is not constitutionally required to provide Evans with a pre-suspension hearing to determine his ability to pay court costs before suspending his driver's license. In addition, the Department's order of suspension was reasonably calculated to notify Evans (1) that his license was being suspended for failing to pay his court costs; and (2) that he could appeal the order.

Accordingly, it is ORDERED:

Case No. 3:14cv466/MCR/CJK

1.	Plaintiff's motion for extension of time (doc. 22) is GRANTED.

And it is respectfully RECOMMENDED:

1.	That defendant's motion for summary judgment (doc. 17) be GRANTED.

2.	That plaintiff's cross-motion for summary judgment (doc. 23) be DENIED.

3.	That plaintiff's Emergency Motion to Enjoin the Enforcement of Defendant's Notice of Suspension Pending Disposition of this Cause (doc. 20) be DENIED AS MOOT.

4.	That the clerk be directed to enter judgment in favor of defendant and against plaintiff and close the file.

At Pensacola, Florida, this 29th day of February, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

Case No. 3:14cv466/MCR/CJK

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.